NORWEST CREDIT, INC., presently known as Wells Fargo Credit, Inc., A Minnesota Corporation, Appellant,

v.

CITY OF DAVENPORT, a Political Subdivision of the State of Iowa; City Assessor of the City of Davenport, Appellees,

and

Brammer Company, LLC, a Minnesota Limited Liability Company, et al., JB Disbursing Services, Inc., a Minnesota Corporation; Plant Services Incorporated, an Iowa Corporation; Yates Electric, Inc., an Iowa Corporation; Midwestern Automatic Fire Sprinkler Co., Inc., an Iowa Corporation; Colona Sand & Excavating, Inc., an Illinois Corporation, Defendants.

No. 99–1235.

Supreme Court of Iowa.

April 25, 2001.

Kimberly J. Walker and Benjamin W. Hopkins, Faegre & Benson, L.L.P., Des Moines, and D. Charles Macdonald,

Faegre & Benson, L.L.P., Minneapolis, Minnesota, for appellant.

Thomas D. Warner and Brian E. Heyer, Davenport, for appellees.

Deborah M. Tharnish of Davis, Brown, Koehn, Shors & Roberts, P.C., Des Moines, and Robert L. Hartwig, Des Moines, for amicus curiae, Iowa Bankers Association.

■▆▆▆▆▆▆▆▆▆

SNELL, Justice.

This appeal asks us to decide if a tax assessment recorded second in time to a mortgage survives foreclosure of the mortgage under Iowa Code section 403.6(19) (1999). The district court held that a purchaser at the foreclosure sale is bound by the later assessment on the property under the statute. We disagree and reverse the decision of the district court.

## I. Factual Background and Procedure

This case comes to us from a supplemental ruling issued by the district court following the grant of summary judgment in favor of Norwest Credit, Incorporated. On appeal, Norwest Credit will now be referred to by its present name, Wells Fargo Credit, Incorporated (Wells Fargo). The background facts leading up to this appeal are as follows.

Brammer Company, LLC (Brammer) is a cabinet manufacturing company doing business in Davenport, Iowa. On November 18, 1997, Brammer and Wells Fargo entered into a loan agreement for the amount of $2.6 million. In exchange for the loan, Brammer mortgaged certain real property in Scott County to Wells Fargo. This mortgage was properly recorded by Wells Fargo on December 4, 1997.

On August 5, 1998, Brammer entered into an assessment agreement with the City of Davenport in exchange for a $500,000 economic development grant. Exactly eleven months after Wells Fargo recorded its mortgage, Davenport properly recorded the assessment agreement on November 4, 1998.

■ An assessment agreement is a way to finance improvements to local real estate, usually in blighted areas. *See* Black's Law Dictionary 111–12 (7th ed.1999).

> These assessments are, in a certain sense, taxes. But an assessment differs from a general tax in that an assessment is levied only on property in the immediate vicinity of some local municipal improvement and is valid only where the property assessed receives some special benefit differing from the benefit that the general public enjoys.

Robert Kratovil, *Real Estate Law* 465 (6th ed.1974). The agreement is usually financed by the real estate holder assuming a bonded indebtedness. In the instant case, the amount of the bond covering the loan to Brammer was $500,000. The assessment on the real estate in question was then fixed at $2.5 million. The goal of this agreement was to amortize repayment of the $500,000 grant through the increased taxes Brammer would pay given the property's new taxable value.

Before such time, Brammer defaulted on its loan payments to Wells Fargo. Wells Fargo commenced foreclosure of the mortgage on February 3, 1999. Several defendants were named in Wells Fargo's foreclosure action, including: Brammer, the City of Davenport, and the Assessor of the City of Davenport. The latter two defendants were included because of their interest in the encumbered real estate through the assessment agreement.

Brammer did not contest foreclosure. Wells Fargo moved for summary judgment which was granted. The district court reserved for supplemental ruling the

question of whether the recorded assessment was a junior obligation on the land such that it would be extinguished by a foreclosure sale. Wells Fargo argued that the assessment agreement was akin to a junior mortgage because it came second in time. As such, the foreclosure sale purchaser would not be obligated to repay the $500,000 bond, nor be bound by the assessed value of the property.

Conversely, Davenport argued that an assessment agreement is superior to any recorded mortgage regardless of the timing and is binding on the foreclosure sale purchaser. The district court agreed with Davenport; Wells Fargo appealed. The issue is whether a purchaser at the foreclosure sale should be considered a subsequent purchaser or encumbrancer and therefore be subject to the assessment agreement recorded by the City of Davenport.

## II. Scope and Standard of Review

 Although in equity, our review of an appeal from the grant of summary judgment is on legal error. *Keokuk Junction Ry. Co. v. IES Indus., Inc.*, 618 N.W.2d 352, 355 (Iowa 2000) ("Notwithstanding the nature of this equitable action, the court cannot find facts de novo in an appeal from summary judgment." (citation omitted)). When our review necessarily calls upon us to interpret the scope and meaning of statutory provisions, our review is also for correction of errors at law. *State v. Cortez*, 617 N.W.2d 1, 3 (Iowa 2000). In both regards, our court is "not bound by the trial court's determinations of law." *State v. Eickelberg*, 574 N.W.2d 1, 3 (Iowa 1997).

## III. Issue on Appeal

 Our determination depends upon our interpretation of Iowa Code section 403.6(19). Specifically, we address whether a foreclosure sale purchaser at a foreclosure sale necessitated by a defaulted senior mortgage is a subsequent purchaser for purposes of a later recorded assessment. Section 403.6(19) states in relevant part:

> Recording of an assessment agreement complying with this subsection constitutes notice of the assessment agreement to a subsequent purchaser or encumbrancer of the land or any part of it, whether voluntary or involuntary, and *is binding upon a subsequent purchaser* or encumbrancer.

Iowa Code § 403.6(19) (emphasis added). Normally, junior interests in real property are inferior to a mortgage recorded first in time. *See id.* §§ 558.41, 654.12A. Also, junior liens are generally extinguished by foreclosure of a senior lien. *Id.* § 654.23. But for the question of the interpretation of section 403.6(19), these would be the applicable rules. Section 403.6(19), however, may create an exception.

The recording statutes indicate they may be trumped under certain circumstances. For example:

> An interest in real estate evidenced by an instrument so filed shall have priority over any lien that is given equal precedence.... Nothing in this section shall abrogate the collection of, or any lien for, unpaid property taxes which have attached to real estate pursuant to chapter 445, including taxes levied against tangible property that is assessed and taxed as real property pursuant to chapter 427A, or the collection of, or any lien for, unpaid taxes for which notice of lien has been properly recorded pursuant to section 422.26.

*Id.* § 558.41. Consider also:

> [T]he priority of a prior recorded mortgage under this section does not apply to loans or advances made after receipt of notice of foreclosure or action to en-

force a subsequently recorded mortgage or other subsequently recorded or filed lien.

*Id.* § 654.12A. However, section 403.6 is not listed among those that override the standard recording pecking order.

Wells Fargo and the Iowa Bankers Association in an amicus curiae brief suggest that the term subsequent purchaser cannot refer to a foreclosure sale purchaser because it would have the unfair effect of binding a senior mortgagee to a later encumbrance.

> Fundamental to the law of real property is the rule that one may not convey or alienate a greater interest in land than he owns, and, consistently with this axiomatic principle, it is firmly established that a mortgagor cannot, without the consent of the mortgagee, make a dedication of the mortgaged premises so as to adversely affect the interest of the mortgagee.

*W. Fertilizer & Cordage Co. v. BRG, Inc.,* 228 Neb. 776, 424 N.W.2d 588, 593 (1988) (citations omitted). Further, the Iowa Bankers Association argues that the district court's holding is in direct conflict with the maxim: "If a person other than the mortgagor purchases at the sale, the liens of junior lienholders are extinguished." Iowa Code § 654.23.

■ The question then remains, is a foreclosure sale purchaser a subsequent purchaser under section 403.6(19)? Our answer must be no. When a financial institution makes a loan to an interested party and land is given as collateral, the effect is the purchase of a security interest in the mortgaged property by the lender. Restatement (Third) of Property § 4.1, at 279 (1996). As Iowa is a lien theory state, title does not pass to the mortgagee. *See* Iowa Code § 557.14. However, when the senior mortgagee is forced to foreclose on the mortgage and chooses to purchase the property at the foreclosure sale it is merely exercising its security interest in the property that existed at the execution of the mortgage. *See Kellogg v. Illinois Cent. R.R. Co.,* 204 Iowa 368, 375, 215 N.W. 258, 258 (1927). As such, it is not a subsequent purchaser for purposes of section 403.6(19). The senior mortgagee has a prior security interest that it chooses to act upon. Accordingly, a first-in-time lienholder does not fall under the purview of section 403.6(19). When the mortgagee then takes possession of the land at foreclosure it does so free of later recorded encumbrances.

Our interpretation of section 403.6(19) finds support from a Minnesota court's interpretation of a substantially similar assessment statute. *See Princeton Bank v. County of Mille Lacs,* No. C2–94–382–R, 1995 WL 539263, at *2–3 (Minn. Tax Ct. Sept. 8, 1995) (discussing Minn.Stat. § 273.76(8) (1980) (current version at Minn.Stat. § 469.177(8) (1999))). Even with the language of the statute that the assessment agreement is binding on any subsequent purchaser, the court held that a first-in-time mortgagee was not bound by the later recorded assessment agreement upon foreclosure. *Id.* at *3.

Likewise, a third party not the mortgagor who purchases at a foreclosure sale of the senior mortgage is not a subsequent purchaser. Because this purchaser takes title to the property as it stood at the time of the execution of the senior mortgage, although the purchase is literally subsequent to the assessment, the purchase extinguishes all later encumbrances. *Kellogg,* 204 Iowa at 375, 215 N.W. at 258 (holding the foreclosure sale purchaser takes the "entire title that the mortgagor had in said premises as of the *date of the execution of the mortgage*" (emphasis added)).

In other words, the purchaser at the foreclosure sale, whether he be the original mortgagee or a third party, by such purchase and subsequent sheriff's deed takes the title of the mortgagor in and to the premises as of the date of the execution of the mortgage. The mortgagor could not, by release or conveyance, affect the title to the premises as it was at the date of the mortgage, as against such purchaser.

*Id.* at 375–76, 215 N.W. at 258. Nothing in section 403.6(19) changes this outcome for assessment agreements. The section still binds subsequent purchasers to the assessment agreement when the property is purchased through ordinary buyer/seller channels or when the landowner takes out an additional mortgage.

Davenport contends that this holding is contrary to the mandate of chapter 403 that we are to interpret its provisions liberally to advance its goal. Iowa Code § 403.6. The purpose of chapter 403 is urban renewal, *i.e.*, the elimination of blighted areas through appropriate public action or expense. *Id.* §§ 403.1, .2. Our holding today does not defeat the purpose of this chapter. To the contrary, a different result would have a far greater negative impact on urban renewal programs because it would make mortgages in blighted areas less attractive to financial institutions, thereby depleting the amount of money made available by private businesses to benefit these areas. This would create a greater necessity for public funds to effectuate urban renewal. The consequence of that burden may diminish the development of these areas, thus destroying the goal of urban renewal.

The district court concluded that such a holding "would deny municipalities the security of the minimum assessment and would be detrimental to economic development." We recognize that our interpretation of section 403.6(19) may make cities more wary of providing public money through assessment grants. But as with any junior lender, there always exists less security and greater risk.

We hold that a foreclosure sale purchaser, whether the plaintiff senior mortgagee or a third party, is not a subsequent purchaser. Therefore, the plain meaning of section 403.6(19) leaves statutory recording precedence intact. Accordingly, we reverse the supplemental ruling of the district court and remand for entry of judgment for Wells Fargo against the City of Davenport.

**REVERSED AND REMANDED.**

All justices concur except NEUMAN, J., who takes no part.