Timothy **MASON**, Harlan Dettman and Ronald Klienow, Appellants,

v.

**VISION IOWA BOARD** of the State of Iowa and its Negotiating Committee on the Marquette–McGregor Legacy Project, Appellees.

No. 04–0491.

Supreme Court of Iowa.

July 15, 2005.

Wallace L. Taylor, Cedar Rapids, for appellants.

Thomas J. Miller, Attorney General, and Mark A. Thompson, Assistant Attorney General, for appellees.

TERNUS, Justice.

The appellees, Timothy Mason, Harlan Dettman, and Ronald Klienow, brought this action against the appellants, Vision Iowa Board of the State of Iowa and its negotiating committee for the Marquette–McGregor Legacy Project, alleging the negotiating committee violated Iowa's open meetings law, Iowa Code chapter 21 (2003). The district court granted sum-

mary judgment to the defendants, ruling the negotiating committee was not a "governmental body" subject to chapter 21, and even if it was a governmental body, it did not hold a "meeting" within the meaning of chapter 21. Because we agree that the meetings of the negotiating committee were not within the prohibitions of Iowa's open meetings law, we affirm the district court's dismissal of the plaintiffs' lawsuit.

## I. *Statutory Framework for Vision Iowa Board.*

It is helpful at the outset to understand the structure and function of the entities sued in this action. The Vision Iowa Board ("board") administers the Vision Iowa program. *See* Iowa Code § 15F.302(1). This program was created by the legislature to "assist communities in the development of major tourism facilities" through the award of monetary grants. *Id.* In addition to administering the Vision Iowa program, the board is also responsible for establishing and administering a Community Attraction and Tourism Program ("CAT") to assist in the development of small tourism projects. *See id.* §§ 15F.202(1), .204.

The Iowa department of economic development is directed by statute to provide assistance to the board in several areas, including assistance in administrative functions and contract negotiation. *See id.* § 15F.104. Applications for financial assistance are first screened by department staff, and those applications meeting eligibility requirements are then sent to a Vision Iowa review committee or a CAT review committee. *See* Iowa Code §§ 15F.203, .304. These committees are

created by statute and are composed of specified members of the board. *See id.* §§ 15F.203(2), .304(2). The review committees make recommendations to the full board, which then decides whether to approve, defer, or deny an application. *See id.* §§ 15F.203(2), (4), .304(2), (4). When a project is approved for the Vision Iowa program, the board is authorized to "enter into an agreement with the applicant to provide financial assistance" under the program. *See id.* § 15F.304(4).

## II. *Background Facts and Proceedings.*

In April 2001 the communities of McGregor, Strawberry Point, and Guttenburg submitted an application to the department seeking a grant of over $6 million. The application was considered by the CAT review committee. The review committee recommended that "the board issue a Notice of Intent to Consider Award for the Marquette–McGregor project" and consider "whether any funding should come from the Vision Iowa or CAT program." Subsequently, the board issued a Notice of Intent and appointed "a negotiating committee to determine a potential award amount and to recommend whether it should be a Vision Iowa or CAT award."[1] The number of board members to serve on the negotiating committee, as well as the identity of those members, was left to the discretion of the board chair.

Over the next few weeks, the chair contacted various members of the board to serve on the negotiating committee, but the bulk of the negotiating fell to the board chair and another board member. The committee reported back to the board

---

1. The total cost of the project was near the threshold amount necessary for a Vision Iowa project, so there was some question whether the project would more appropriately be funded by the Vision Iowa program rather

than the CAT program. *See* Iowa Code § 15F.303(1) (establishing a $20 million minimum cost for any project funded under the Vision Iowa program).

in October 2001, recommending an award of $5 million from the Vision Iowa program with certain contingencies, including an acceptable development agreement with a golf course developer. The board approved the recommendation subject to several conditions, including a development agreement "acceptable to the Vision Iowa board." The negotiating committee was charged "with reviewing the development agreement to advise the board as to whether it was acceptable."

Significant concerns about the viability of the project were raised in the course of the negotiations with the developer, and negotiations and meetings between the negotiating committee and supporters of the project continued throughout 2002. A meeting between the committee and the project proponents was scheduled to be held just prior to the regular board meeting on January 8, 2003. An opponent of the project, Stan Thomas, attempted to attend this meeting, but was told by the board chair that the meeting was closed. Thereafter, the committee meeting was canceled.

At the board meeting held the same day, the committee reported that contract negotiations were still in progress. Extensive discussion ensued concerning the financing issues on the Marquette–McGregor project. Ultimately, one board member requested a full update at the board's February meeting and suggested that the board make a final decision on the project at its March meeting. The matter was opened for public comment, and several opponents of the project, including plaintiff Mason, expressed concerns about the feasibility of the project and the environmental effects of the project.

Immediately prior to the board's meeting on March 12, 2003, the negotiating committee met with the proponents of the project in a closed meeting. Several members of the public, including plaintiffs Dettman and Klienow, were not permitted to attend this meeting. At the subsequent board meeting, department staff reported that the negotiation team had recently met with the proponents who had provided some additional financial information. The board was informed that the committee was not ready to propose any board action. Nonetheless, the matter was again opened for public comment, and Mason addressed the board with his concerns.

At the board's meeting on April 9, 2003, the committee reported that it had not been able "to reach terms acceptable to both sides as to the hotel and golf course components [of the project or] on the financing." "Because there [was] agreement on the other components" (a trail and a streetscape), the negotiating committee "recommend[ed]" that those components be severed from the Vision Iowa project and be considered separately as a CAT project. *See* Iowa Code § 15F.303(1) (authorizing board to "divide a proposed project into component parts"). Based upon the recommendation of the negotiating committee, the board concluded the conditions of the grant could not be met, and so the board formally withdrew its financial assistance for the project under the Vision Iowa program.

On April 1, 2003, the plaintiffs filed a petition in equity against the board and its negotiating committee alleging that the negotiating committee was a governmental body as defined in Iowa Code section 21.2(1)(c), and the committee's meeting on March 12, 2003 was a public meeting as defined in section 21.2(2). Because this meeting was closed to the public, the plaintiffs claimed the defendants violated section 21.3 of Iowa's open meetings law. The plaintiffs sought damages from each member of the negotiating committee, a mandatory injunction ordering the commit-

tee members to refrain from future violations of chapter 21, and an award of attorneys fees.

The defendants filed a motion for summary judgment asserting: (1) the committee was not a governmental body; (2) the committee did not hold a meeting as defined in the statute; and (3) damages could not be assessed against the committee members because they were not individually named in the suit or served with an original notice. The district court granted the defendants' motion, ruling the committee was not a governmental body and did not hold a meeting within the scope of chapter 21. Having made these determinations, the court found it unnecessary to address any remaining issues.

The plaintiffs have appealed. Because we find dispositive the issue of whether the negotiating committee's meeting in March 2003 was a gathering subject to the requirements of chapter 21, we focus our discussion on that issue.

### III. Scope of Review.

■ The scope and standard of review of summary judgment rulings are well established. This court reviews such rulings for correction of errors of law. If the record shows no genuine dispute of a material fact and that the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. In assessing whether summary judgment is warranted, we view the entire record in a light most favorable to the nonmoving party. We also indulge in every legitimate inference that the evidence will bear in an effort to ascertain the existence of a fact question.

*Crippen v. City of Cedar Rapids*, 618 N.W.2d 562, 566 (Iowa 2000) (citations omitted). "A genuine issue of material fact is lacking when a reasonable jury or judge could conclude that no evidence entitles the nonmoving party to relief." *Keokuk Junction R.R. v. IES Indus., Inc.*, 618 N.W.2d 352, 355 (Iowa 2000).

■ The scope of review is on legal error even where, as here, the case is in equity. *See Norwest Credit, Inc. v. City of Davenport*, 626 N.W.2d 153, 155 (Iowa 2001). Likewise, "[w]hen our review necessarily calls upon us to interpret the scope and meaning of statutory provisions, our review is also for correction of errors at law." *Id.* In both instances, this court is " 'not bound by the trial court's determinations of law.' " *Id.* (citation omitted).

### IV. Relevant Provisions of Chapter 21.

Iowa's open meetings law "seeks to assure, through a requirement of open meetings of governmental bodies, that the basis and rationale of governmental decisions, as well as those decisions themselves, are easily accessible to the people." Iowa Code § 21.1. To this end, "[a]mbiguity in the construction or application of . . . chapter [21] should be resolved in favor of openness." *Id.; accord Donahue v. State*, 474 N.W.2d 537, 539 (Iowa 1991).

The plaintiffs claim the defendants violated the following provision of chapter 21: "Meetings of governmental bodies shall be preceded by public notice as provided in section 21.4 and shall be held in open session unless closed sessions are expressly permitted by law." Iowa Code § 21.3; *see also id.* § 21.5(1) (listing acceptable reasons for closed session, none of which are implicated here). Not all gatherings, however, are considered "meetings" under the statute. The law specifically defines a "meeting" as

a gathering in person or by electronic means, formal or informal, of a majority of the members of a governmental body where there is deliberation or action

upon any matter *within the scope of the governmental body's policy-making duties.*

*Id.* § 21.2(2) (emphasis added).

In addition to claiming the negotiating committee is not a "governmental body," the defendants assert the committee had no "policy-making duties," and therefore, the committee's meeting was not a gathering required to be held in open session. As noted earlier, we need not determine whether the committee is a governmental body because we agree with the district court that the committee's meetings did not fall within the statutory definition of a "meeting" subject to the open-meetings requirement of section 21.3.

### V. *Interpretation of Statutory Definition of "Meeting."*

A gathering of a governmental body must be open to the public only "where there is deliberation or action upon any matter within the scope of the governmental body's *policy-making* duties." Iowa Code § 21.2(2) (emphasis added); *accord Tel. Herald, Inc. v. City of Dubuque,* 297 N.W.2d 529, 533 (Iowa 1980). The fighting issue in the present case is whether the negotiating committee's deliberations and actions were in furtherance of any policy-making duty placed on the committee.

The phrase "policy-making duties" is not defined in chapter 21. Therefore, we look to the common. meaning of that term in interpreting the statutory definition of "meeting." *See In re Estate of Thomann,* 649 N.W.2d 1, 4 (Iowa 2002); *see also State v. Westeen,* 591 N.W.2d 203, 208 (Iowa 1999) (stating the dictionary supplies a ready source for the "common meaning of a word"). The dictionary defines "policymaking" as "the act or process of *setting* and *directing* the course of action to be pursued by a government, business, etc." *Webster's New World College Dictionary*

1114. (4th ed.2001) (emphasis added). To set and direct a course of action is to establish and order a course of action. *Webster's Third New International Dictionary* 640, 2077 (unabr. ed.2002) (defining "direct" as "to point out, prescribe, or determine a course or procedure" and stating synonyms for "set" are FIX, SETTLE, ESTABLISH"); *see also Roget's International Thesaurus* 893.8, at 615 (5th ed.1992) (including "direct" with "govern …, rule, control …, order, regulate, … guide"). In contrast, to *recommend* a course of action is merely to suggest favorably a particular plan of action. *See Webster's Third New International Dictionary* 1897 (defining "recommend" as "offer or suggest as favored by oneself").

Thus, "policy-making" is more than recommending or advising what should be done. "Policy-making" is deciding with authority a course of action. Although the plaintiffs contend there is nothing in the statutory definition "that restricts the open-meetings requirement … to bodies that have decision-making authority," the authority to make a decision is inherent in the duty to *make* policy. *See* 1980 Op. Iowa Atty. Gen. 148, 152–53 & n. 3 (stating requirement in statutory definition of "meeting" that body exercise "policy-making duties" excludes advisory groups from open-meetings requirement).

The notion that policy-making commonly denotes something more than advice is illustrated by our prior cases applying the open meetings law. In *Donahue,* we held that an advisory board "exercises no policy-making power." 474 N.W.2d at 539. In an earlier case in which we held an entity was subject to the open-meetings requirement, this court noted that the entity at issue was "a powerful decision-making and policymaking body" and was "not a mere study or advisory group." *Greene v. Athletic Council,* 251 N.W.2d 559, 561

(Iowa 1977), *superseded by statute as stated in Donahue,* 474 N.W.2d at 539.

■ In determining that a policy-making duty entails some degree of decision-making authority, we have not overlooked the fact that in 1989 and in 1993 the legislature added certain purely advisory groups to the statutory definition of "governmental body," specifically

> *e.* An advisory board, advisory commission, or task force created by the governor or the general assembly to develop and make recommendations on public policy issues.
>
> . . . .
>
> *h.* An advisory board, advisory commission, advisory committee, task force, or other body created by statute or executive order of this state or created by an executive order of a political subdivision of this state to develop and make recommendations on public policy issues.

Iowa Code § 21.2(1)(*e* ) (enacted 1989 Iowa Acts ch. 73, § 1), (*h* ) (enacted 1993 Iowa Acts ch. 25, § 1). These groups by definition "make *recommendations* on public policy issues" as opposed to *making policy.* Iowa Code § 21.1(1)(*e* ), (*h* ) (emphasis added). As we have already determined, only gatherings in which a governmental body establishes and directs policy are encompassed in the statutory definition of "meeting." Clearly, then, there is a conflict between the legislature's definition of "meeting" and its subsequent inclusion of advisory groups in the definition of "governmental body."

We do not think the amendments to the statutory definition of "governmental body" can be interpreted as amendments of the statutory definition of "meeting," in effect eliminating the "policy-making duties" qualification from the latter definition. If such a modification was desired by the legislature, it was for the legislature to specify the change; it is not for the

court to incorporate the change by interpretation. *See Consol. Freightways Corp. v. Nicholas,* 258 Iowa 115, 122, 137 N.W.2d 900, 905 (1965). Notwithstanding the tension in the statute, we think it is clear the legislature intended to make the delineated advisory groups subject to the open meetings requirement. Otherwise, the legislature's act of including these entities in the definition of "governmental body" would be a nullity because none of the restrictions and requirements imposed on "meetings" of a governmental body would apply. *See Jenney v. Iowa Dist. Ct.,* 456 N.W.2d 921, 923 (Iowa 1990) (stating court assumes "amendment is adopted to accomplish a purpose and was not simply futile exercise of legislative power"); Iowa Code § 4.4(2) (stating presumption that in enacting a statute, legislature intends the entire statute to be effective). Thus, the specified advisory groups would be subject to the open-meetings requirement when they deliberate or act within the scope of their duty to develop and make recommendations on public policy issues. But as to all other governmental bodies, the legislature left unchanged the definition of "meeting," including the requirement that the body act in its policy-making role.

The fact that the legislature made specified advisory groups subject to the open meetings law is of no assistance to the plaintiffs here because the negotiating committee was not created by the governor, by the general assembly, by statute, or by executive order of the state or a political subdivision of the state so as to fall within paragraphs (*e* ) or (*h* ) of section 21.2(1). Although the plaintiffs contend the negotiating committee was in reality a Vision Iowa review committee created by section 15F.304(2), the record does not support this contention. The undisputed facts establish that the negotiating committee did not consist of the board mem-

bers designated in the statute creating review committees; the negotiating committee did not review the application and make a recommendation to approve, defer, or deny the application as review committees are required by section 15F.304(3), (4) to do; and a CAT review committee had already performed these functions prior to the formation of the negotiating committee. Thus, the negotiating committee is not one of the statutorily-specified advisory groups subject to the open-meetings requirement. Consequently, we must determine whether the undisputed facts establish that the negotiating committee did not deliberate or act within the scope of any policy-making duty so that its gathering did not qualify as a "meeting" within the statutory definition of that term.

## VI. *Application of Law to This Case: Did the Negotiating Committee Have a "Meeting"?*

Examining the undisputed facts in the record, we find no support for a finding that the negotiating committee had responsibility for anything more than simply recommending or suggesting to the board what course of action to take on the Marquette–McGregor project. The July 2001 board minutes reveal that the committee was "to determine a *potential* award amount and to *recommend* whether it should be a Vision Iowa or a CAT award." (Emphasis added.) There is no evidence that authority to *set* the award amount or *decide* whether it should be made under the Vision Iowa or CAT programs was given to the committee. Later, in October 2001, the committee *recommended* an award of $5 million from the Vision Iowa program, with certain contingencies. It is undisputed that the *board* approved the recommendation and charged the negotiating committee "with reviewing the development agreement *to advise the board* as to whether it was acceptable." (Emphasis

added.) Again, ultimate authority to accept or reject the development agreement was reserved to the board; the committee's duty was advisory only. Eventually, the committee reported that it had not been able to negotiate an agreement within the conditions established by the board's grant, and so the committee *recommended* only a portion of the project be funded under a CAT award. Acting on this recommendation, the *board* chose to withdraw its Vision Iowa grant. Once again, the *board* made the ultimate decision on the course of action to be taken on the project.

■ Relying on a Florida case, the plaintiffs suggest we should take judicial notice of "the fact that committee recommendations are often accepted by public bodies at face value and with little discussion." *Bigelow v. Howze,* 291 So.2d 645, 647 (Fla.Dist.Ct.App.1974). In view of this "fact," plaintiffs argue, the negotiating committee was the de facto policy-maker on the Marquette–McGregor project. We do not think this "fact" is a proper subject for judicial notice.

The Iowa Rules of Evidence allow a court to take judicial notice of certain "adjudicative facts." Iowa R. Evid. 5.201(*a*).

A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

Iowa R. Evid. 5.201(*b*). The suggestion that committee recommendations are routinely followed by public bodies is not generally known, nor is it capable of accurate and ready determination. Therefore, we cannot take judicial notice of this "fact." *See Warford v. Des Moines Metro. Transit Auth.,* 381 N.W.2d 622, 623 (Iowa 1986)

(refusing to take judicial notice of inter-governmental agreement creating MTA "because it is not the type of evidence that is 'common knowledge or capable of certain verification' ").

█ The plaintiffs also argue that the negotiating committee's failure to bring a recommendation to the board at the board's March meeting, as one board member had previously requested, "was certainly setting policy in this regard" because, as a result, the fate of the project was not decided at the March board meeting. We do not think the committee's inability to meet a deadline imposed by one board member set policy. The committee's charge was simply to make recommendations to the board. The committee had no recommendation in March, so the board took no action on the project at that time. The record shows that ultimately the committee brought a recommendation to the board, and the *board* decided to withdraw its grant. This sequence of events does not support a finding that the committee had or exercised any "policy-making duties."

In a related argument, the plaintiffs also rely on the fact the agenda for the board's March 2003 meeting included an update on the Marquette–McGregor project; yet, they contend, the project was not discussed because it was taken off the agenda

by the negotiating committee. In response, the defendants claim the board minutes show the project was discussed at that meeting; there was simply no recommendation made by the negotiating committee as had been anticipated.[2]

We do not think any factual dispute regarding whether or not the project was "discussed" at the board's March meeting is material to a determination of whether the negotiating committee had a "meeting" within the meaning of Iowa's open meetings law. Therefore, this dispute does not preclude summary judgment. *See Fin. Mktg. Servs., Inc. v. Hawkeye Bank & Trust,* 588 N.W.2d 450, 455–56 (Iowa 1999). Even if we accept as a fact that the negotiating committee was responsible for a failure by the board to discuss the project in March, again, this fact is not material to whether a "meeting" of the committee took place prior to the board's March meeting. The committee's failure to make a recommendation in March, thereby leaving the board with nothing to consider, does not demonstrate the committee had any authority to set or direct board policy. There is nothing in the record to show the board could not have considered the project in March had it been willing to forgo a recommendation from its negotiating committee and a review of the recent financial information provided by the project sup-

---

2. The board minutes state in reference to the Marquette–McGregor project:

[Department staff] reported that a negotiation team met today with project proponents. [He] reported that no action was taken and there was nothing to propose or put forward by the negotiation team committee at this point and that there was no action that needed to be taken.

. . . .

[A board member] commented on proponents' and opponents' presence and asked if the project would be discussed. [The board chair] responded that there were no real issues on this project to discuss at this time.

[The board member] asked for an update on the project. [The chair] responded that [there] were discussions with project representatives prior to the Board meeting, however, there was nothing to bring to the Board at this time.

Tim Mason approached the Board, requesting the opportunity to give testimony for the public record. [The chair] opened public comment.

[The board minutes contain a nearly three-page summary of the public comments on this project, which also includes statements, questions, and responses by various board members.]

porters. The board minutes show that board members were free to ask questions about the project or to make comments concerning it, and several members did so during the course of the board's March meeting.

Finally, the plaintiffs contend that prior to the board's March meeting, the committee met "with project proponents to manipulate a way to make this project go in spite of the objections from members of the public." The plaintiffs support this conclusion with a memo prepared by one of the proponents in which the proponent states that the proponents "should request a meeting prior to [the board's] regularly scheduled meeting to provide [an] update, so that we don't have to discuss this in front of the world." The plaintiffs claim "[t]his is exactly the kind of activity by a public body that needs to be conducted in the light of public scrutiny."

Initially, we note it is somewhat of a leap to conclude that the proponents' desire to discuss their financial difficulties in private indicated an intent to manipulate the process. Nonetheless, even if we accept the plaintiffs' assertion that those discussions should be conducted in public, this court is constrained by the terms of the open meetings law. As we have noted in the past,

> It was ... for the legislature to set [the] parameters [of the open meetings law.] In doing so it assumed responsibility for weighing the law's stated purpose against situations when the demands of efficient administration require a measure of confidentiality. We might or might not set some boundaries differently. Our clear responsibility is nevertheless to apply the ones established by the legislative branch of government.

*Donahue,* 474 N.W.2d at 539. Chapter 21 clearly reaches only those meetings at which the governmental body deliberates or acts in a "policy-making" role. Because there are no facts in the record to support a finding that the negotiating committee had anything more than an advisory function, its March 2003 meeting was not required to be open to the public.

## VII. *Summary.*

The district court correctly ruled the undisputed facts establish as a matter of law that the negotiating committee did not have any policy-making duties. Therefore, its meetings were not subject to the open meetings law. Accordingly, we affirm the district court's summary judgment ruling in favor of the defendants.

**AFFIRMED.**