Plaintiff J.D. Fleener filed a petition alleging defendants, Mahaska County; Greg Gordy and Henry (Willie) Van Weeldon, Mahaska County Supervisors; the City of Oskaloosa; David Dixon, Mayor; Pam Blomgren, Tom Jiminez, Lori Smith, and Aaron Ver Steeg, Oskaloosa City Council members, violated the Iowa Open Meetings law. As we agree with the district court that there is no genuine issue of fact regarding whether a meeting occurred in violation of Iowa Open Meetings law, we affirm the summary judgment ruling of the district court.
I. Background Facts and Proceedings
The Mahaska County Board of Supervisors held a public meeting on November 19, 2007, regarding the possible location of a new Pella Municipal airport in Mahaska County. The Board rejected the proposed site if it were to be used solely as a Pella airport, rather than a regional airport, and sent a letter to Pella city officials to that effect. On January 2, 2008, Joe Crookham, CEO of Musco Sports Lighting, L.L.C., in Oskaloosa, called the Mahaska Board of Supervisors office, spoke with Supervisor Gordy, and asked to meet with him as well as the other supervisors. Not knowing the purpose of Crookham's request, Gordy went alone to the Musco offices where he met with other Musco officials as well as the director of the Oskaloosa Chamber of Commerce. He was informed that the Pella Airport Site Selection Task Force was scheduled to meet on January 4, 2008, and Musco was interested in keeping dialog open as to the concept of a regional airport. Beth Danowsky, grant specialist for Musco, was present at this meeting, and was placed in charge of drafting a letter to the City of Pella, anticipating gaining support from both the Oskaloosa City Council and Mahaska Board of Supervisors for Musco's request. With the assistance of Mayor Dixon, a letter was drafted.
Danowsky contacted various members of both the Oskaloosa City Council and Mahaska County Board of Supervisors, in hopes of obtaining their signatures on the letter to the city of Pella mayor and city manager. This letter was to signal their openness to further communicate with Pella about airport site selection. The January 3, 2008 letter read:
 Airport site selection is important to the economic well-being and sustainability of the entire area. Accordingly, for the long-term mutual benefit of our communities we would request the opportunity to participate with the Pella City Council in evaluating site selection for a new airport to serve employers and employees of the Pella and Oskaloosa communities. Thank you. Sincerely. . . .
Four of the seven Oskaloosa City Council members signed the letter, Pamela Blomgren, Lori Smith, Aaron Ver Steeg, and Tom Jiminez, (who took office on January 1, 2008); the mayor of Oskaloosa, David Dixon, also signed. Likewise, two of the three Mahaska County Board of Supervisors signed the letter: Greg Gordy and Willie Van Weeldon.
On February 4, 2008, J.D. Fleener, a Mahaska County resident, filed this action against the above defendants, alleging a violation of the Iowa Open Meetings law.[1] The Board of Supervisors held a public meeting on February 19, 2008, in order to authorize the sending of an additional letter to the City of Pella, clarifying their interest regarding the airport site selection. The new letter was signed by Henry W. Van Weelden and Greg Gordy.[2] Similarly, the Oskaloosa City Council also held a public meeting and voted to send a follow-up letter, expressing the majority of the Council's interest in continuing dialog with Pella on the airport site selection to benefit both communities. Mahaska County, and supervisors Gordy and Van Weeldon, filed a motion to dismiss, which was later joined by the City of Oskaloosa, and council members Blomgren, Jiminez, Smith, and Ver Steeg, as well as Mayor Dixon. The motion to dismiss was denied. Subsequently, the Mahaska defendants filed a motion for summary judgment, again joined by the Oskaloosa defendants, and the motion was granted on January 14, 2009. Fleener appeals.
II. Scope of Review
The court reviews a ruling on a motion for summary judgment for correction of errors of law. Iowa R. App. P. 6.907 (2009);Mason v. Vision Iowa Bd., 700 N.W.2d 349, 353 (Iowa 2005). In reviewing, our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. Id. The district court must examine, in the light most favorable to the party opposing the motion, the entire record before it, including the pleadings, admissions, depositions, answers to interrogatories and affidavits, if any, to determine for itself whether any genuine issue of material fact is generated thereby. Adam v. Mt.Pleasant Bank Trust Co., 355 N.W.2d 868, 872 (Iowa 1984). The scope of review is on legal error even where, as here, the case is in equity. Mason, 700 N.W.2d at 353.
III. Summary Judgment
Fleener argues that in granting defendants' summary judgment motion, the district court erred in failing to find a violation to the Iowa Open Meetings law, asserting that in the drafting and signing of the January 3, 2008 letter, a meeting occurred between the Oskaloosa City Council members and Mahaska Board of Supervisors members involving deliberation and action, and violating public policy. Iowa's Open Meetings law is designed to "assure, through a requirement of open meetings of governmental bodies, that the basis and rationale of governmental decisions, as well as those decisions themselves, are easily accessible to the people." Iowa Code § 21.1. The purpose is to require meetings of government bodies to be open and allow the public to attend. KCOB/KLVN, Inc. v. JasperCounty Bd. of Supervisors, 473 N.W.2d 171, 173 (Iowa 1991). To achieve this purpose, our law requires that "[m]eetings of governmental bodies shall be preceded by public notice as provided in section 21.4 and shall be held in open session unless closed sessions are expressly permitted by law." Iowa Code § 21.3. The law specifically defines "meeting" as
 a gathering in person or by electronic means, formal or informal, of a majority of the members of a governmental body where there is deliberation or action upon any matter within the scope of the governmental body's policy-making duties. Meetings shall not include a gathering of members of a governmental body for purely ministerial or social purposes when there is no discussion of policy or no intent to avoid the purposes of this chapter.
Id. at § 21.2(2).
The fighting issue in this case is whether the events culminating in the four signatures of Oskaloosa City Council members and mayor, and two Mahaska County Supervisors on the January 3, 2008 letter resulted in a "meeting." We must determine whether the district court was correct in finding no gathering or meeting occurred either in person or electronically (via email or telephone), "where there was deliberation or action." In her deposition, Danowsky references contacting the seven above signatories, and either inviting these people individually to the Musco office, or volunteering to bring the letter to their home or place of business, in order to sign the letter.[3] There is no evidence of an in-person gathering, as the signatures were each obtained by Musco at a separate time, and there is no evidence of a prior gathering of any of the various board or council members to discuss the letter amongst themselves. Danowsky confirmed this when asked, "[a]t any time were there multiple council members in your presence signing what's turned out to be Exhibit 2 at the same time?" She responded, "no."
Next we look at whether an electronic gathering occurred, as plaintiff asserts that phone and email communication with Danowsky and the various members amounted to a meeting. To determine whether deliberation took place, we look to the actions of each signatory. In her deposition, Danowsky testified she met with Ver Steeg, Jiminez, and Smith, in November, 2007, "to get their perspectives to see if they are inclined to extend some sort of communication, and communicate with the other four." However, in preparing the January 3, 2008 letter, she only had one-on-one contact with the various signatories, seeking their individual support. Ver Steeg stated that he received a call from Danowsky where she explained she was putting a letter together, stated the purpose, and asked if he would be willing to sign. He received an email draft, but stated he had no idea whether the draft was emailed to anyone else. In his affidavit, Ver Steeg stated that he did not meet nor talk with any other Oskaloosa City Council members before signing the January 3 letter. Council member Smith stated in her deposition,
 Beth Danowsky called and she said, what if we put together some kind of a letter telling the people in Pella who are working on this airport deal that we are in a position where we would have open ears and we could be participating in a discussion. And I said yeah, sounds fine to me. She said well, I'll send you a draft and you can take a look at it. . . . So she called me the next morning and she said there is a letter and it's up at the desk at Musco, if you could sign it. . . . And that was it. And I didn't talk to anybody or see anybody.
According to Council member Blomgren's affidavit, she had not spoken nor met with any other Council or Board member prior to being contacted by Danowsky on January 2 about the proposed letter. She then reviewed the letter and Danowsky came to Blomgren's home for her signature on January 3. Jiminez stated that he was contacted by Danowsky on January 3, who was inquiring as to whether he would be amenable to signing a letter in support of further conversations with the City of Pella as to a regional airport. Danowsky then brought the letter to him and he signed, having had no discussion with any Council or Board member prior to the signing. Finally, in Mayor Dixon's affidavit, he affirmed, "[a]t [the time of creating the letter] no other members of the Oskaloosa City Council or Mahaska County Board of Supervisors were present, and none were contacted or consulted." When he later signed the letter, he was in his law office, with a client, and his secretary brought him the letter for his signature.
In Mahaska County Supervisor Van Weeldon's affidavit, he stated that he had no discussions with either of the other Supervisors concerning the proposed letter. He described how he was contacted by Crookham on January 2, 2008 and went to the Musco offices accompanied by Calvin Rozenboom, a member of the State Farm Bureau Board. After a long discussion with Musco officials, he signed the January 3 letter. Supervisor Gordy stated that he went to the Musco offices and discussed the proposed letter with Crookham, who wanted his support in furthering discussions with the City of Pella. In his deposition he testified that there was no "meeting" with any other Supervisor prior to his signing the letter.
Fleener contends that these separate phone or email contacts by Danowsky or Crookham with the various Board and Council members amounted to serial communications, resulting in deliberation, such that a meeting occurred. It is clear Danowsky communicated with four members of the Oskaloosa City Council, the Oskaloosa mayor, and two members of the Mahaska Board of Supervisors in order to inform each of the prospective letter to the City of Pella, in hopes of garnering their individual signatures. However, there is no evidence of the various Board and Council members communicating with each other such that there is any material fact that any "deliberation" occurred. SeeEsperanza Peace Justice Ctr. v. City of San Antonio,316 F. Supp. 2d 433, 473 (W.D. Texas 2001) (finding a violation of the open meetings law when a majority of city council members were shuffled in and out of a room in a deliberate attempt to avoid the appearance of the presence of a quorum).
We agree with the district court that in order to determine whether a meeting occurred that encompasses "deliberation or action," we look not only to whether there was communication, but also the intent behind any such communications. The district court found
 there is no genuine issue of fact regarding whether an electronic meeting took place. . . . The deposition testimony of [the defendants], as well as the [record], establishes that the exchange of telephone calls and emails and notes of Ms. Danowsky and the individual Defendants was merely for the purposes of reviewing the content of the letter, and arranging times for the individual Defendants to sign the letter. There is no indication of serial communication, and no indication that the process used was used in order to use the electronic communications to reach a decision on the joint airport issue. Simply put, there was no gathering of a majority of the members of the Council or the Board.
 . . . Plaintiff has not generated a genuine issue of material fact on the issue of whether a majority of the Council or Board discussed policy or public business over the emails. Rather the record establishes the individual Defendants communicated with Ms. Danowsky regarding the letter Ms. Danowsky had drafted, and regarding when they would be available to sign the letter.
Based on the record on summary judgment, there is no indication that either the in-person or electronic communication (email or telephone) between Danowsky and the individual Council and Board members, constituted a meeting. The actions of one outside person contacting the Board and Council members do not satisfy the statutory definition of a gathering or a meeting where deliberation transpired. Rather, a meeting involves a gathering in person or by electronic means of a majority of the members of a governmental body where there is deliberation.See Iowa Code § 21.2(2). We agree with the district court that even if the earlier November 2007 gathering of Ver Steeg, Smith, and Jiminez, with Danowsky, was considered a meeting without a majority of the Council members present, "there could be no violation of the Open Meetings Act. All discussions relating to the January 3, 2008 letter were between Danowsky and the individual Council and Board members."
There is no evidence of any discussion among a majority of the Board or Council members. At most what could be gleaned from the summary judgment record was that as the various members signed the January 3, 2008 letter, the later ones to sign were informed of any who had already signed, and were also able to see those signatures. We agree no meeting and no deliberation occurred. See Iowa Code § 21.2(2) ("Meetings shall not include a gathering of members of a governmental body for purely ministerial or social purposes when there is no discussion of policy or no intent to avoid the purposes of this chapter."). The individual Council and Board members' affidavits and depositions reflect that each person individually received information from Musco through Danowsky or Crookham in order to investigate or keep the doors of communication open with the City of Pella on the location of a new airport. See Telegraph Herald, Inc. v. City ofDubuque, 297 N.W.2d 529, 534 (Iowa 1980) ("Activities of a governmental body's individual members to secure information to be reported and acted upon at an open meeting ordinarily does not violate the statute."); Gavin v. City of Cascade,500 N.W.2d 729, 732 (Iowa Ct. App. 1993) (holding that sequential communications by the Mayor with various Council members was not determined to be a meeting as defined by the statute, or to violate the open meetings law).
The January 3, 2008 letter was signed by four Oskaloosa City Council members, the Mayor, and two Mahaska County Board members individually, based on the information each had individually received from Musco, not from a majority of their members meeting and deliberating with intent to circumvent the open meetings law. We agree with the district court that there is no genuine issue of material fact as to whether a meeting with deliberation or action occurred, either in person or by electronic means. We therefore find the district court did not err in granting defendants' motions for summary judgment.
AFFIRMED.
[1] Iowa's Open Meetings law is defined in Iowa Code section 21.4(1) (2007) as:
 A governmental body, except township trustees, shall give notice of the time, date, and place of each meeting, and its tentative agenda, in a manner reasonably calculated to apprise the public of that information. Reasonable notice shall include advising the news media who have filed a request for notice with the governmental body and posting the notice on a bulletin board or other prominent place which is easily accessible to the public and clearly designated for that purpose at the principal office of the body holding the meeting, or if no such office exists, at the building in which the meeting is to be held.
[2] Because these second letters were formally authorized by the Oskaloosa City Council and Mahaska Board of Supervisors, defendants assert any issues regarding the first letter are moot. The district court did not address the issue of mootness, and ruled on the merits of the summary judgment motion. We likewise will address the issues of this case. See City ofDes Moines v. Pub. Employment Relations Bd.,275 N.W.2d 753, 759 (Iowa 1979). ("Mootness does not affect the Power of a court of this state to act. Instead the refusal to rule on moot questions is a self-imposed rule of restraint.")
[3] She stated she only included signature lines for those members she anticipated would sign the letter.