Patricia DONAHUE, Appellant,

v.

STATE of Iowa, Board of Regents, and University of Iowa, Judicial Hearing Panel (Members: Marilyn Zurmuehlen, Samir Bishara, and Nicholas Colangelo), Appellees.

No. 89–1415.

Supreme Court of Iowa.

Sept. 18, 1991.

Jerry N. Zimmermann, Cedar Rapids, for appellant.

Thomas J. Miller, Atty. Gen., and Julie F. Pottorff, Asst. Atty. Gen., for appellees.

HARRIS, Justice.

Is an administrative panel, organized among university faculty members to review promotion decisions, a "governmental body"? If so it is subject to Iowa's open meetings law. Iowa Code ch. 21 (1989). The district court thought it is not and we agree.

Patricia Donahue, an associate professor of nursing at the University of Iowa, was denied a promotion to full professor. She appealed the denial through the university's departmental and college decision-making process. The process begins with deliberation within the department (or the entire college if it is small). The deliberation is by faculty members who are selected from the level sought by the candidate. A recommendation based on these deliberations is then made by the dean to the university vice president for academic affairs. It was recommended that Donahue's promotion be denied, and it was.

The university operations manual prescribes faculty dispute resolutions to be followed for grievance or upon denial of tenure, promotion, or reappointment. The stages in the denial procedure are: (1) informal discussions; (2) requests for a written statement of reasons; (3) investigation by and, when deemed appropriate, a hearing before a faculty judicial panel; and (4) the president's decision. An open meetings violation is alleged to have occurred at the third stage, during a hearing before the faculty judicial panel.

The judicial hearing panel is formed through and by the university's faculty senate, which in turn is elected by the faculty at large. The process assures representation from various colleges as well as both tenured and nontenured faculty members. Faculty judicial panels serve as investigating panels and, if necessary, as hearing panels. The panel dissolves when the case is resolved.

Administrative rules detail the panel's investigative and hearing procedures. The procedure culminates in a recommendation. If its findings are adverse to the faculty

member, the case is closed, subject only to a possible decision by the board of regents to grant the faculty member's request for a review. If the panel finds in favor of the faculty member, it so advises the university president who gives great weight to, but is not bound by, the panel's recommendations.

All documents are presumed confidential during the investigation. Each party has the opportunity to designate documents as confidential, so each can prevent dissemination of documents deemed unsuitable for public knowledge. The panel itself may make such a designation. The panel's report is released to the public only if the faculty member or the president has already made public the essentials of the report, or it follows an open hearing. The procedures were drafted by faculty and the university administration and presented to the board of regents. Other than approving these procedures, the board of regents has played no part in the process or the appointment of committee or panel members.

Donahue initiated the administrative process and filed a timely "grievance" with the university's judicial hearing panel. She based her grievance on Faculty Dispute Procedure section 20.264(I)(B)(2) and (3), the provisions relating to denial of tenure, promotion, or reappointment. She alleged she had been denied promotion because of bias and the peer review committee's erroneous findings regarding her record and achievements.

Before the panel met, and during its proceedings, Donahue made it clear that she wanted the hearing to be an open one. She wanted a reporter from the local newspaper present, and also a member of a national association of college educators. The panel rejected the request. It noted the procedure dictating confidentiality at the prior procedural stage, the one before the peer review committee, then extended that reasoning to its own hearing. The panel believed these matters were traditionally confidential and believed that witnesses should have some room to express their opinions in confidence. It also believed it

was more likely to get "forthcoming statements" in a closed atmosphere. The meeting was closed.

■ Donahue brought this action after exhausting her administrative appeal. She appeals from an adverse district court ruling. The sole issue on appeal is whether the panel is a governmental body. This is the controlling question in the dispute; Donahue's appeal is grounded on Iowa Code section 21.6(3)(c) (court shall "void" actions taken in violation of the chapter).

Iowa Code section 21.3 provides that meetings of governmental bodies "shall be held in open session unless closed sessions are expressly permitted by law" and all informal as well as formal actions and discussions of the bodies "shall be conducted and executed in open session."

The statute defines "governmental bodies" as:

a. A board, council, commission or other *governing body* expressly created by the statutes of this state or by executive order.

. . . .

c. A multimembered body *formally and directly created by one or more boards,* councils, commissions, or other *governing bodies* subject to paragraphs "a" and "b" of this subsection.

d. Those multimembered bodies to which the state board of regents or a president of a university has delegated the responsibility for the management and control of the intercollegiate athletic programs at the state universities.

Iowa Code § 21.2(1) (emphasis added). This section goes on to define a meeting as a gathering "where there is deliberation or action upon any matter within the scope of the governmental body's policy-making duties." Iowa Code § 21.2(2).

In *Greene v. Athletic Council of Iowa State University,* 251 N.W.2d 559, 562 (Iowa 1977), we, by majority decision, held that a university athletic council was *authorized* by Iowa law and hence was subject to the open meetings law. The General Assembly responded by deleting the term "authorized" from the statutory defi-

nition. 1978 Iowa Acts ch. 1037, § 3. In its place the legislature provided that, in order to qualify, a governmental body must be expressly created by statute, or be formally and directly created by another governmental body which itself is subject to the open meetings law. A body is no longer subject to the open meetings law merely because it is "authorized" to carry out functions of the regents. *See generally* 1A Bonfield *Iowa Administrative Law: Cases and Materials,* at 382.

It is clear that the panel exists essentially as an advisory board. It exercises no policy-making power. Its findings are in no way binding on the board of regents. The panel is far removed from the regents; layers of university officials separate the panel from the regents.

■ We adhere to our view that the open meetings law is to be liberally construed. Its purpose is to "prohibit secret or 'star chamber' sessions of public bodies, to require such meetings to be open and to permit the public to be present." *Greene,* 251 N.W.2d at 560 (quoting *Dobrovolny v. Reinhardt,* 173 N.W.2d 837, 840 (Iowa 1970)). The statute was enacted for the public benefit and should be construed to favor openness. *Id.*

It was however for the legislature to set its parameters. In doing so it assumed responsibility for weighing the law's stated purpose against situations when the demands of efficient administration require a measure of confidentiality. We might or might not set some boundaries differently. Our clear responsibility is nevertheless to apply the ones established by the legislative branch of government.

The trial court correctly held that the panel here does not, under the statutory definition, qualify as a governmental body. The open meetings law does not apply.

AFFIRMED.