# IN THE COURT OF APPEALS OF IOWA

No. 24-0029
Filed January 9, 2025

**ROBERT TEIG,**
        Plaintiff-Appellant,

**vs.**

**PATRICK LOEFFLER, ASHLEY VANORNEY, DALE TODD, BRAD HART, ANN POE, TYLER OLSON and SCOTT OLSON,**
        Defendants-Appellees.
_____

        Appeal from the Iowa District Court for Linn County, Andrew Chappell, Judge.


        A Cedar Rapids resident appeals from the district court's dismissal of his lawsuit claiming members of the Cedar Rapids city council violated Iowa's open meetings statute when they closed the job interview of an applicant for the position of city clerk and argues the district court erred in its orders closing part of the trial and sealing the recording of the job interview meeting. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**


        Robert L. Teig, Cedar Rapids, self-represented appellant.

        Patricia G. Kropf, Assistant City Attorney, Cedar Rapids, for appellees.

        Heard by Ahlers, P.J., Sandy, J., and Potterfield, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2025).

**SANDY, Judge.**

We filed our opinion in this case on December 4, 2024, but subsequently granted both the plaintiff's and defendants' petitions for rehearing. Our December 4, 2024 decision is therefore vacated, and this decision replaces it. *See* Iowa R. App. P. 6.1204(5).

Robert Teig, a resident of Cedar Rapids, Iowa, sued the members of the city council of Cedar Rapids (the Council), claiming they violated Iowa's open meetings statute when they closed the job interview of an applicant for the position of city clerk. *See* Iowa Code § 21.5(1)(i) (2021). Teig appeals the district court's dismissal of his lawsuit, as well as the court's orders closing part of the trial and sealing the recording of the job interview meeting. He argues the district court made an error at law by dismissing the case and abused its discretion in closing part of the trial and sealing the interview recording because it cited no law and made no factual findings supporting its decision to do so.

We reverse the district court's judgment with respect to its interpretation of the closed meetings law and hold that the closed session should have been reopened to the public upon the Council's assessment that no needless and irreparable injury would occur to the job applicant during the interview. Accordingly, we remand for the district court to assess any applicable defenses, and, if no defenses negate Teig's claim for damages, to determine such statutory damages. We affirm the district court's denial of Teig's motion to reconsider insofar as it relates to the district court's decision to close part of trial and seal the closed meeting recording.

## I.   Background Facts and Proceedings

On April 29, 2021, the Council members—Brad Hart, Tyler Olson, Ann Poe, Patrick Loeffler, Dale Todd, Scott Olson, and Ashley Vanorny—held an interview with Alissa Van Sloten for the position of city clerk.  Van Sloten was a longtime city employee and was then serving as interim city clerk.  She requested that her interview be conducted in a closed session pursuant to Iowa Code section 21.5(1)(i).

The proposed agenda was submitted to the city attorney for review—a common practice for any meeting with a closed session.  He made one edit to an item in the proposed agenda, which initially read: "Selection process for the City Clerk position.  This meeting may be closed pursuant to Iowa Code Section 21.5(1)(i) (2021)."  After the city attorney's edit, the agenda item read: "Interview of City Clerk candidate.  Note: May be closed pursuant to Iowa Code Section 21.5(1)(i) (2021)."

The meeting was conducted via Zoom video conference consistent with all city council meetings at that time.  Following a motion and unanimous vote, the closed session commenced.  Preliminary matters related to the closed session were discussed, and Van Sloten was connected to the meeting.  Then, they were off and running without looking back.  The Council made no inquiry into why Van Sloten requested the closed session.  Her interview was conducted, and she disconnected from the meeting.  The Council deliberated about her candidacy and the closed session ended.  The open session was reconvened, and the meeting concluded.  Van Sloten's hiring was formally approved at a later meeting as part of the consent agenda.

Van Sloten only later testified that she requested the closed session because she was concerned about the possibility of something negative about her being brought up. Yet she did not articulate that at the time of the interview. She claimed the concern was precautionary as she could not determine ahead of time what information would come up during the interview. Yet she cited no specific information that she believed would have caused needless and irreparable injury. Van Sloten testified she did not know how all of the council members felt about her job performance until then and wanted to prepare in case they had any negative assessments in that respect. She testified that she would not have applied for the position if she knew the interview would be public because she characterizes herself as an introverted person. She testified she was uncomfortable with the idea that the interview would be livestreamed on Facebook and available on the internet.

Each member of the Council testified to their decision to close the meeting. Each member agreed on several points. The Council members agreed that (1) there was a general consensus that an interview would and should routinely be closed upon the interviewee's request, (2) none of them knew of any specific, negative information that would come up during the interview, (3) the city attorney was preemptively informed of the closed session request and affirmatively approved it in writing, and (4) no negative information was ultimately revealed during the interview.

The members of the Council knew the standard questions that would be asked during Van Sloten's interview, but they did not know what Van Sloten's answers would be or what follow-up questions would be raised. Council member

Vanorney testified that in her experience interviewing job applicants, "sometimes there are very surprising, shocking things that just end the interview process with [a] candidate," even in that candidate's "third or fourth vetting." This, combined with the city attorney's assurances that closing the session did not raise any legal conflicts, convinced the Council it was appropriate to close the session.

## II. Standard of Review

"Actions to enforce the open meetings law are ordinary, not equitable, actions." *Hutchison v. Shull*, 878 N.W.2d 221, 229 (Iowa 2016). We afford the district court's findings of fact the same deference we afford a jury's special verdict. *Id.* Such findings of fact are binding if supported by substantial evidence. *Id.* "Substantial evidence supports a factual finding when the finding 'may be reasonably inferred from the evidence presented.'" *Id.* at 229–30 (citation omitted). "This appeal requires us to construe the Iowa open meetings law" and will be reviewed for corrections of errors at law. *Id.* at 230.

To the extent that Teig challenges the district court's evidentiary rulings or discretionary actions, we review those actions for abuse of discretion. *Andersen v. Khanna*, 913 N.W.2d 526, 535 (Iowa 2018).

## III. Discussion

Teig argues the district court made an error at law by dismissing his suit against the Council because the Council did not know of particular adverse information about Van Sloten and nothing said at the meeting would have caused needless and irreparable harm to her reputation. He also argues the district court abused its discretion in closing part of the trial and sealing the interview recording

because it cited no law and made no factual findings supporting its decision to do so. We address both arguments in turn.

### A. Closure of the Interview Session

We first address Teig's argument that the district court erred in dismissing his lawsuit against the Council.

Iowa's open meetings law is contained in Iowa Code chapter 21. The statute generally requires any "governmental body" to conduct its meetings in open session, unless a closed session is expressly permitted by law. Iowa Code § 21.3 (2021). The term "open session," as it is used in the statute, means "a meeting to which all members of the public have access." *Id.* § 21.2(3).

Section 21.5 sets forth the procedure that must be followed before a closed session may be held. This procedure requires that either two-thirds of the members of the governmental body or all the members present must vote, in open session, to hold a closed session. *Id.* § 21.5(1). The vote of each member along with the statutory provision authorizing the closed session must be announced at the open session and entered into the meeting's minutes. *Id.* § 21.5(2). And, once in closed session, the members present may not discuss any business "which does not directly relate to the specific reason announced as justification for the closed session." *Id.*

Section 21.5 also provides the various reasons for which a closed session may be held. A governmental body may conduct a closed session "[t]o evaluate the professional competency of an individual whose appointment, hiring, performance, or discharge is being considered when [(1)] necessary to prevent needless and irreparable injury to that individual's reputation and [(2)] that

individual requests a closed session." *Id.* § 21.5(1)(i). As the district court acknowledged, "[t]his language, in some form, has been part of the law since it was first adopted in 1967." When first adopted, section 28A.3 provided that a closed session could be held "when necessary to prevent irreparable and needless injury to the reputation of an individual whose employment or discharge is under consideration." Iowa Code § 28A.3 (1971).

Section 21.5(1)(i) contains no requirement that a factual record be made in open session as to why closure is necessary. And we have held that section 21.5's language stating that a closed session "may" be held upon a proper showing "confers a power and places discretion within the one who holds the power." *Feller v. Scott Cnty. Civ. Serv. Comm'n*, 435 N.W.2d 387, 390 (Iowa Ct. App. 1988). We will thus only find that the government body has abused its discretion when "it is exercised on clearly untenable grounds or to a clearly unreasonable extent." *Id.*

The open meetings law may be enforced by any aggrieved person, taxpayer, or citizen of the state, along with the attorney general and county attorneys, by suit brought in the county in which the governmental body has its principal place of business. Iowa Code § 21.6(1) (2021). Once a complainant establishes that a governmental body is subject to the requirements of chapter 21 and held a closed session, the governmental body and its members then have the burden to demonstrate they complied with the law. *Id.* § 21.6(2).

If the district court finds, by a preponderance of the evidence, that the governmental body has violated the law, there are several remedies set forth in the statute. *See id.* § 21.6(3). The district court shall "assess each member of the governmental body who participated in its violation damages in the amount of not

more than five hundred dollars and not less than one hundred dollars." *Id.* § 21.6(3)(a). But damages shall not be assessed against any member who (1) "[v]oted against the closed session," (2) "[h]ad good reason to believe and in good faith believed facts which, if true, would have indicated compliance" with chapter 21, or (3) "[r]easonably relied upon . . . a formal opinion of . . . the attorney for the governmental body, given in writing." *Id.* § 21.6(3)(a)(3).

The district court must "void any action taken in violation of [the statute]" if (1) the suit is brought within six months of the alleged violation, and (2) the district court finds "that the public interest in the enforcement of the policy of [chapter 21] outweighs the public interest in sustaining the validity of the action taken in the closed session." *Id.* § 21.6(3)(c). And the district court must enter an order removing from office any member that "has engaged in a prior violation of [the statute] for which damages were assessed against" them during such member's term. *Id.* § 21.6(3)(d). Finally, the district court may issue an injunction punishable by contempt ordering all members of the governmental body to refrain from any future violations for a year. *Id.* § 21.6(3)(e).

No party disputes that the city council of Cedar Rapids is a governmental body subject to the duties of chapter 21. Nor is there any dispute that a closed session was held. So the Council bears the burden to establish, by a preponderance of the evidence, that it complied with the statute. It is also not disputed that the closed session was called to "[t]o evaluate the professional competency of an individual whose . . . hiring . . . [was] being considered," *id.* § 21.5(1)(i), or that Van Sloten—the individual being considered—requested the closed session. Thus, the sole issue the parties dispute is whether the closed

session was "necessary to prevent needless and irreparable injury to [Van Sloten's] reputation." *Id.*

It is true that the purpose of chapter 21 is to "assure, through a requirement of open meetings of governmental bodies, that the basis and rationale of governmental decisions, as well as those decisions themselves, are easily accessible to the people." *Id.* § 21.1; *see also Hutchison*, 878 N.W.2d at 237 ("The legislature clearly intended public bodies subject to the open meetings law to deliberate the basis and rationale for important decisions . . . during open meetings."). Yet that purpose is not unfettered. The governmental entity must exercise discretion when considering whether to close a meeting.

Although section 21.5(1)(i)—the section at issue here—specifically seeks to protect government employees and applicants, *see Feller*, 435 N.W.2d at 390, transparency remains the overarching aim of chapter 21. The protection afforded by section 21.5(1)(i) is not meant to lessen the gravity of the purpose stated in section 21.1. But section 21.5(1)(i) recognizes the importance of protecting the privacy of government employees, and it helps ensure the governmental body balances those sometimes-conflicting interests. Our supreme court has explained that the open meetings law was enacted to favor openness but that the legislature has "set [the law's] parameters" and that sometimes the "demands of efficient administration require a measure of confidentiality." *Donahue v. State*, 474 N.W.2d 537, 539 (Iowa 1991).

Teig argues that section 21.5(1)(i) requires the governmental body to identify specific information that will injure the applicant's reputation in a way that is needless and irreparable and that the meeting may be closed only "when

necessary" to prevent the disclosure of that injuring information.  While that view may sound restrictive, we agree that it is the only avenue by which the statutory word "necessary" takes on any qualitative meaning.  Why is a closed session necessary?  The language of the statute presumes the governmental body will know the answer before exercising its discretion to cloak an otherwise public proceeding.  Teig's interpretation makes open meetings the default position while still leaving a means to close meetings consistent with section 21.5(1)(i).

There are several issues with the Council's position that they are free to close any job interview upon the applicant's request.  For one, it invites the governmental body to approve closed meetings more liberally than contemplated by statute.  For example, an applicant would simply need to invoke the magic words, "fear of needless and irreparable injury" and could then have the governmental body close the entire interview without further inquiry as to why.  In that circumstance, there would be no analysis of whether any needless and irreparable injury would occur without the closed session.  Necessity becomes unnecessary.

The Council's position that the statute "does not require specific negative information about the applicant be known in order to close the meeting" similarly ignores the plain language of section 21.5(1)(i).  The statute's direction that an interview may be closed only when "*when necessary* to prevent needless and irreparable injury to that individual's reputation" implies that there are times when it is not necessary to close the interview.  *Id.* § 21.5(1)(i) (emphasis added).  Under the statute, the applicant's request to close the meeting is a separate prong from the necessity requirement.  The necessity prong would not act as a barrier to

closing meetings if a candidate simply needed to utter the magic words in their closed meeting request. In this case, not even those magic words were uttered. Van Sloten simply requested that the interview be closed "pursuant to Iowa Code section 21.5(1)(i)."

So absent evidence that it is necessary to prevent needless and irreparable injury, the applicant's request to close the meeting does not meet the statutory requirements for maintaining the closed session. The governmental body must conduct further inquiry into the necessity of the closed session to ensure that the closed session complies with the statute. And a reasonable interpretation of the statute would allow for such inquiry to occur in a limited closed session, thus avoiding any "unrung bell" concern.

Here, the Council failed to ask any questions as to why Van Sloten's request was necessary. Not one. And that is troublesome given the Council's admission that they would have closed the interview regardless of her reason. There was a consensus in the Council's testimony that the interview would be closed upon a request, none of them knew of any specific, negative information that would come up during the interview, and no negative information was ultimately revealed during the interview. And while it is difficult to ascertain what exactly would come up during an interview, such is the case in every interview. Something more than mere possibility is required—otherwise every interview could be kept closed upon request.

The district court raised the concern of other "strained, impractical or absurd results" that would come out of Teig's statutory interpretation:

> It could result in a meeting being closed and reopened multiple times based on what questions were asked. It also would seem to require much of the deliberation regarding a hiring decision to be done in open session, with a separate vote to close the meeting in the event a member thought they were going to make an observation or share an impression that would be damaging to the candidate's reputation. Because, as the [Council] pretty well unanimously pointed out, there simply is no way to know during an interview, for instance, when something negative will come up. The Court also finds that, if this was the procedure the legislature had meant to require, it very easily could have written the statute differently to make that clear.

But our case law already recognizes that such fluidity in coming in and out of open and closed session is not impractical or absurd. *See Feller v. Scott Cnty. Civ. Serv. Comm'n*, 482 N.W.2d 154, 155–56 (Iowa 1992) (describing a fact pattern in which a county commission entered and exited multiple closed sessions and reversing district court on other grounds). Efficiency should not take priority over transparency.

We find that Van Sloten's expression of concern for her reputation served as sufficient reason to *initially* close the interview session. To find otherwise would require a candidate to make public the specific concern for their closed session request during open session. Indeed, "requiring an individual to expressly state in an open session the exact nature of the reputational harm they would suffer would render [section 21.5(1)(i)] useless." Closed Session Requirements, Advisory Opinion 21AO:0007 (Iowa Pub. Info. Bd. Oct. 21, 2021). But the Council violated the statute's requirements when, upon closing the session, it failed to even attempt to ascertain any specific, damaging information that would justify continuing the interview outside the public's view.

**B. Damages.**

Iowa Code section 21.6(3)(a) requires a court to assess damages if a governmental body has been found to have violated any provision of chapter 21. Damages assessed shall be between $100 and $500 to each member that participated in such violation, and between $1000 and $2500 if that member's participation in the violation was knowing. *Id.* That section also provides for several defenses the violating member may assert to avoid assessment of damages for their participation in the violation. *Id.* § 216.(3)(a)(1)–(3).

Having found the Council engaged in a violation of chapter 21, we remand to the district court to determine whether any defenses under section 21.6(3)(a)(1)–(3) are available and the extent to which the Council is subject to the mandatory damages if no statutory defense is available. The district court is permitted to make this remand decision without further evidence or argument if it so chooses. However, if the district court decides it may benefit from additional evidence, hearings, or argument, the court is permitted, at its sole discretion, to conduct hearings, receive evidence, or receive additional argument on the terms and conditions it sets.

**C. Closure of the Trial and Sealing of Closed Meeting Recording**

Teig contends that the district court improperly closed part of the trial and sealed the recording of the closed session.

Although Van Sloten's interview session was improperly closed by the Council, the district court could not have yet made that determination at the time the closed meeting recording was played at trial. At that stage of the case, competing statutory requirements remained at play. *Compare* Iowa Code

§ 602.1601 (2023) (stating judicial proceedings are to be public unless otherwise provided by statute or agreed to by the parties), *with* Iowa Code § 21.5(5)(b)(1) (providing that a the closed session recording "shall be sealed and shall not be public records open to public inspection"). Until the district court made its final ruling, it could not make the closed portion of the trial public without risking the possibility that it may be publicizing records not permitted to be opened to public inspection. Section 21.5(5)(b)(1) generally prohibits release of closed recordings to the public. And until the district court ruled otherwise, the recording remained a record of a closed session.

But since we reverse the district court's order in respect to its ruling on the Council's decision to hold the closed session, we remand to the district court to ensure the city council makes the record of the closed meeting public. *See* Iowa Code § 21.6(3)(c) (requiring the district court to "void any action taken in violation of this chapter"). So the record of the closed session will nonetheless be made available to the public.

We thus reverse the district court's judgment with respect to its interpretation of the closed meetings law and hold that the closed session should have been reopened to the public upon the Council's assessment that no needless and irreparable injury would occur to Van Sloten during the interview. Accordingly, we remand for the district court to assess any applicable defenses, and, if no defenses negate Teig's claim for damages, to determine such statutory damages. We affirm the district court's denial of Teig's motion to reconsider insofar as it

relates to the district court's decision to close part of trial and seal the closed meeting recording.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**